UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID MCCANN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PYRAMID ADVISORS LIMITED PARTNERSHIP d/b/a PYRAMID HOTEL GROUP,<br><br>Defendant. | Case No. 2:22-cv-560<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR NOMINAL DAMAGES** |

Plaintiff David McCann ("Plaintiff"), on behalf of himself and the proposed class (defined below), brings this action against Pyramid Advisors Limited Partnership d/b/a Pyramid Hotel Group ("Pyramid Group" or "Defendant") and alleges as follows:

## INTRODUCTION

1. Plaintiff David McCann is dependent upon a wheelchair for mobility as the result of a spinal cord injury.

2. The seat height of a standard wheelchair is approximately 18-20 inches from the floor or ground, and the height of the seat on Plaintiff's chair is approximately 19 inches.

3. Plaintiff stays at hotels from time to time. When he stays in a hotel, he stays in an accessible room that has special features calculated to accommodate his mobility impairment.

4. Over approximately the last decade, hotel bed heights (the height of the top of a mattress from the floor) have increased in response to customer preference. This increase has occurred not only in standard hotel rooms, but also in otherwise accessible rooms. This

1

phenomenon has become pervasive across all hotel lodging categories from budget properties to high-end luxury properties.

5. As a result, bed heights which were approximately 21 inches from the floor are now often times 24-30 inches from the floor or higher.

6. This increase in bed height can cause it to be virtually impossible for a wheelchair user like Plaintiff who has limited use of his arms and legs to independently transfer from his wheelchair to the bed surface. This is because of the disparity in the height of a typical wheelchair (18-20 inches) and the height of the mattress surface (24-30 inches or higher).

7. This phenomenon can cause an otherwise accessible hotel room to be utterly inaccessible.

8. Placing an inaccessible bed in a so-called accessible room constitutes a fundamental violation of the Americans with Disabilities Act ("ADA").

9. The existence of this issue is well-known in the hospitality industry, and in fact many of Defendant's industry peers have either already addressed, or are planning to address, the issue directly so as not to impede the usability of their accessible rooms by the very individuals who are the putative customers for those rooms.

10. In this case, Plaintiff seeks injunctive and declaratory relief, compelling Defendant to follow the general accessibility mandate of the ADA, and the ADA's requirement that public accommodations make reasonable modifications to facilitate accessibility, by eliminating this issue in its accessible rooms. Plaintiff also seeks nominal damages. *See Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021).

## BACKGROUND

11. For more than 30 years, the Americans with Disabilities Act has required that individuals with disabilities be provided full and equal access to the goods, services and facilities provided by hotel owners and operators.

12. This mandate requires hotel businesses to provide patrons with accommodations that are readily accessible to individuals with disabilities.

13. However, many hotel operators, including Defendant, do not offer sleeping beds that are accessible to hotel patrons with disabilities. This is a fundamental violation of the general accessibility mandate of the ADA:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

14. Pyramid Group is a hotel and resort management company and operates various hotels throughout the United States.

15. In failing to provide guest rooms with accessible beds, Defendant has engaged in illegal discrimination, excluded and deterred individuals with disabilities from patronizing Defendant's hotels (including Plaintiff), and denied individuals with disabilities full and equal access to the goods, services, facilities, privileges, advantages and accommodations that Defendant offers to the public.

16. Defendant's discrimination violates Title III of the ADA, and unless Defendant is required to change its policies and practices so that Defendant's goods, services, facilities, privileges, advantages, and accommodations are accessible to individuals with disabilities, Plaintiff and the proposed class will continue to be denied full and equal access to Defendant's

hotels and will be deterred from using Defendant's hotels. Indeed, it is difficult to imagine a more fundamental violation of the general accessibility mandate of the ADA.

17. In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a) Defendant offers the required number of accessible rooms with accessible sleeping surfaces (*i.e.*, beds) at each of the hotels that it manages and/or operates, consistent with the ADA's room dispersal requirements; and

   b) Defendant changes its policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages and accommodation to individuals with disabilities related to the provision of accessible sleeping surfaces (*i.e.*, beds) at each of the hotels that it manages and/or operates.

18. Plaintiff also seeks nominal damages pursuant to the doctrine set forth in *Uzuegbunam.*

19. Plaintiff's claims are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision (b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . . Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

### THE ADA AND ACCESSIBLE TRANSIENT LODGING

20. The ADA was signed into law by President George H.W. Bush more than thirty years ago with the intent to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

21. When the ADA's implementing regulations were revised in 2010, a regulatory

impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." *Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design*, U.S. Dep't Just. (July 3, 2010), p. 138.[1]

22. Title III of the ADA includes a general accessibility mandate requiring that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

23. Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C.

---

[1] Available at http://www.ada.gov/regs2010/RIA_2010regs/DOJ%20ADA%20Final%20RIA.pdf (Last retrieved 4/14/2022).

§ 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

24. The United States Department of Justice ("DOJ") has issued scoping regulations which operate in tandem with the general accessibility mandate of the ADA.

25. The ADA's statutory language expressly requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

26. The same requirement that public accommodations must make reasonable modifications to facilitate accessibility is also expressly set forth in the ADA's regulations. *See* 28 C.F.R. §36.302.

27. While the ADA's implementing regulations also address specific accessibility requirements with respect to certain elements in hotels, those regulations are silent regarding arguably the most important element in an "accessible" hotel room: hotel bed height.

28. The DOJ has long taken the position that the fact that a specific element in a public accommodation is not addressed in the ADA's implementing regulations does ***not*** change the fact that a public accommodation's goods and services have to be accessible:

> Where the Department has not issued specific design or technical standards, public accommodations' actions are governed by the ADA's general nondiscrimination requirements and the ADA's overarching equal access mandate. These requirements include the obligation to make reasonable modifications where necessary to provide people with disabilities access to the public accommodation's goods and services . . . .
>
> [T]his silence does not mean that, as a categorical matter, hotels have no obligation to provide beds that are usable by people with disabilities. Rather, because the ADA Standards do not address hotel bed height, the next step in the analysis is to look to

the ADA's general nondiscrimination requirements, including the obligation to make reasonable modifications. (internal citations omitted).

Statement of Interest of the United States of America, *Migyanko v. Aimbridge Hospitality, LLC*, 2:20-cv-01095-NR (W.D. Pa. June 7, 2021), attached as Exhibit 1, at 4-5.[2]

29. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

## JURISDICTION AND VENUE

30. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

31. Personal jurisdiction exists because Defendant owns, manages, and/or operates a hotel located in this District.

32. Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred.

## PARTIES

33. Plaintiff David McCann, at all times relevant hereto, is and was a resident of Allegheny County, Pennsylvania.

34. Plaintiff is a wheelchair user who is limited in the major life activity of walking.

---

[2] *See also Mullen v. Concord Hosp. Enterprises Co., LLC*, No. 2:20-01530-RJC, 2022 WL 295880 (W.D. Pa. Feb 1, 2022) (denying motion to dismiss under FRCP 12(b)(6) on analogous case); *Migyanko v. Aimbridge Hosp., LLC*, No. 2:20-cv-1095-NR, 2022 WL 345058 (W.D. Pa. Feb. 4, 2022) (same); *Eyler v. Garrison Pittsburgh Monroeville Opco LLC*, No. 2:21-cv-01058-CB (W.D. Pa. Apr. 6, 2022) (ECF 18) (same).

35. Plaintiff is both a tester in this litigation and a consumer who uses hotels and wishes to access Defendant's goods and services. *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

36. Defendant Pyramid Advisors Limited Partnership is a Massachusetts limited partnership with its principal place of business in Boston, Massachusetts.

## FACTUAL ALLEGATIONS

37. Defendant owns, manages, and/or operates hotels throughout the United States.

38. As a fundamental part of these operations, Defendant provides hotel rooms with sleeping beds to its customers.

39. Within the applicable limitations period, Plaintiff called the Courtyard Pittsburgh North/Cranberry Woods located at 150 Cranberry Woods Drive, Cranberry, Pennsylvania ("Courtyard Cranberry Woods") and was told by an agent of Defendant that the Courtyard Cranberry Woods provides accessible rooms for its guests but that the beds in these "accessible" rooms have a sleeping surface that is 25.5 inches from the floor.

40. The seat height for Plaintiff's wheelchair is approximately 19 inches from the ground, and the average height of wheelchair seats generally is 18-20 inches.

41. The sleeping surfaces of the beds in Defendant's accessible rooms at the Courtyard Cranberry Woods are significantly higher than the wheelchair's height and render it difficult if not impossible for Plaintiff to independently transfer from his wheelchair to the bed.

42. Plaintiff can safely, easily, and independently transfer to horizontal surfaces that are approximately the same height as his wheelchair seat, such as dining chairs, toilet seats, benches, lower passenger vehicle seats, and bed surfaces.

43. Transferring to horizontal surfaces that are significantly higher than his wheelchair seat is difficult and dangerous for Plaintiff; he must hoist his bodyweight up to the height of the higher surface using primarily upper body strength.

44. Plaintiff risks injury due to falling or straining his shoulders when transferring to higher horizontal surfaces, such as the beds in the purportedly accessible rooms in the Courtyard Cranberry Woods.

45. An investigation performed on Plaintiff's behalf at other properties under Defendant's management and/or operation confirmed that the bed heights in Defendant's accessible rooms are, in many cases, between 24 and 31 inches from the ground and are therefore not readily accessible to Plaintiff and the proposed class.

46. The investigation performed on behalf of Plaintiff further confirmed that, in addition to the Courtyard Cranberry Woods, Defendant owns, manages, and/or operates a substantial number of other hotels in the United States that offer purportedly accessible rooms with bed sleeping surfaces that are too high to be accessible to wheelchair or scooter users.

47. These hotels include, but are not limited to, the following locations:

   A. AC Hotel Portland Downtown/Waterfront—158 Fore St., Portland, ME;

   B. DoubleTree by Hilton Manchester Downtown—700 Elm St., Manchester, NH;

   C. DoubleTree by Hilton Jacksonville—2101 Dixie Clipper Dr., Jacksonville, FL;

   D. Embassy Suites Boston Marlborough—123 Boston Post Rd. W., Marlborough, MA;

E. Boston Harbor Hotel—70 Rowes Wharf, Boston, MA;

F. Radisson Hotel Landing at the Capitol—111 N. Grand Ave., Landing, MI;

G. Hanover Inn at Dartmouth College—2 E. Wheelock St., Hanover, NH;

H. Residence Inn Cincinnati Downtown—506 E. 4th St., Cincinnati, OH;

I. DoubleTree by Hilton Forth Smith City Center—700 Rogers Ave., Fort Smith, AR;

J. Hilton Garden Inn Phoenix Airport North—3883 E. Van Buren St., Phoenix, AZ;

K. Sheraton San Gabriel—303 E. Valley Blvd., San Gabriel, CA;

L. Residence Inn Hartford Downtown—942 Main St., Hartford, CT;;

M. Marriott Clearwater Beach Suites on Sand Key—1201 Gulf Blvd., Clearwater Beach, FL;

N. Laylow Waikiki Autograph—2299 Kuhio Ave, Honolulu, HI;

O. Renaissance Indianapolis North—11925 N. Meridian St., Carmel, IN;

P. Residence Inn Boston Harbor on Tudor Wharf—34-44 Charles River Ave., Boston, MA;

Q. State View Hotel Autograph—2451 Alumni Dr., Raleigh, NC;

R. Courtyard World Trade Center—133 Greenwich St., New York, NY;

S. Marriott Cleveland East—26300 Harvard Rd., Warrenville Heights, OH;

T. Lytle Park Hotel Autograph—311 Pike St., Cincinnati, OH;

U. DoubleTree by Hilton Cincinnati Blue Ash—6300 E. Kemper Rd., Cincinnati, OH;

V. AC Hotel at the Banks—135 Joe Nuxhall Way, Cincinnati, OH;

      W. Marriott Chicago Northwest—4800 Hoffman Blvd., Hoffman Estates, IL;

      X. Marriott Pittsburgh North—100 Cranberry Woods Dr., Cranberry Twp., PA; and

      Y. Aloft Sarasota—1401 Ringling Blvd., Sarasota, FL;

48. Defendant's policy and practice of not providing individuals with disabilities accessible hotel rooms with accessible beds is discriminatory and in violation of the ADA.

49. Though Plaintiff is serving as a tester in this case, he would like to stay at hotels operated by Defendant in the future and use the hotels' accessible rooms, most notably including the Courtyard Cranberry Woods, which is approximately a forty-five minute drive from Plaintiff's residence and is located in the vicinity of plentiful shopping facilities in Cranberry, Pennsylvania.

50. Plaintiff often travels to the Cranberry Township vicinity.

51. However, the lack of accessible rooms with accessible beds has deterred Plaintiff from staying at the Courtyard Cranberry Woods and other hotels managed by Defendant.

52. Plaintiff has been, and in the absence of an injunction will continue to be, injured by Defendant's policy and practice of failing to provide accessible sleeping beds to persons with disabilities.

## CLASS ALLEGATIONS

53. Plaintiff brings this action under Rule 23(a) and (b)(2) of the federal rules of civil procedure and on behalf of himself and the following class: "All individuals who use wheelchairs or scooters for mobility and who have been, or in the future will be, denied the full and equal enjoyment of accessible sleeping surfaces (beds) at hotels owned, operated, and/or controlled by Defendant, as a result of the bed heights being too high to permit a safe independent transfer."

54. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and the Court, and will facilitate judicial economy.

55. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

56. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, services, and facilities due to the policies and practices described above. The questions of law and fact common to the class include, but are not limited to:

   A. Whether Defendant owns, operates, and/or controls places of public accommodation subject to Title III of the ADA, and its implementing regulations;

   B. Whether Defendant provides accessible sleeping surfaces (beds) in its "accessible" hotel rooms;

   C. Whether Defendant adequately disperses guest rooms that have accessible beds; and

   D. Whether Defendant's policies and practices discriminate against Plaintiff and the putative class members in violation of Title III of the ADA and its implementing regulations.

57.     <u>Adequacy of Representation:</u>  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

58.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION
### For Violations of 42 U.S.C. §§ 12181, *et seq.*

59.     Plaintiff incorporates by reference each and every allegation herein.

60.     Plaintiff brings this claim individually and on behalf of the class.

61.     Plaintiff is an individual with a disability under the ADA. 42 U.S.C. § 12102(1)(A).

62.     Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

63.     Defendant operates hotels, or "places of transient lodging," that are places of public accommodation under Title III of the ADA. *Id*.

64.     Defendant has engaged in illegal disability discrimination by, without limitation, failing to ensure that the beds or sleeping surfaces in use in the "accessible" rooms at the hotels it manages and/or operates are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

65. Moreover, by failing to provide accessible beds or sleeping surfaces in its "accessible" rooms, Defendant has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

   a) denying individuals with mobility disabilities opportunities to participate in and benefit from the goods, services and facilities available at Defendant's hotels;

   b) affording individuals with mobility disabilities unequal access to goods, services or facilities;

   c) utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuating the discrimination of others who are subject to common administrative control; and

   d) failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

66. Defendant has failed to make reasonable modifications by having accessible beds in its accessible guest rooms in violation of 42 U.S.C. §12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302.

67. Defendant's ongoing and continuing violations of Title III have caused, and in the absence to an injunction will continue to cause harm to the Plaintiff and the class.

68. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

   a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and

the relevant implementing regulations of the ADA, in that Defendant failed to take action reasonably calculated to ensure that Defendant's beds or sleeping surfaces in its "accessible" rooms were fully accessible to, and independently usable by, individuals with visual disabilities;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its beds and sleeping surfaces in its "accessible" rooms into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that those beds and sleeping surfaces are fully accessible to, and independently usable by, individuals with disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c. An Order Certifying the proposed class, naming Plaintiff as the representative of the class, and designating counsel for Plaintiff as class counsel;

d. Payment of costs and reasonable attorneys' fees as provided for by law;

e. Nominal damages; and

f. Such other additional or alternative relief as the Court finds just and proper.

Dated: April 14, 2022                               Respectfully submitted,

                                                    */s/ R Bruce Carlson*
                                                    R. Bruce Carlson
                                                    **CARLSON BROWN**
                                                    222 Broad St.
                                                    PO Box 242
                                                    Sewickley, PA 15143
                                                    bcarlson@carlsonbrownlaw.com
                                                    (724) 730-1753

                                                    Nicholas A. Colella
                                                    James M. LaMarca
                                                    **LYNCH CARPENTER LLP**
                                                    1133 Penn Avenue Floor 5
                                                    Pittsburgh, PA 15222
                                                    (412) 322-9243
                                                    nickc@lcllp.com
                                                    james@lcllp.com

                                                    *Attorneys for Plaintiff*

15